## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

————————

CECELIA M. PADILLA, as Personal Representative
of the Estate of Gilbert Padilla, deceased, d/b/a
VALLE DEL SOL CONSTRUCTION,

        Plaintiff,

v.                                      No. CIV 03-695 BB/LFG

WESTERN HERITAGE INSURANCE COMPANY,

        Defendant.


## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court for consideration of Defendant's motion for summary judgment (Doc.27); Plaintiff's motion for partial summary judgment regarding the duty to defend (Doc. 31); and Plaintiff's motion for partial summary judgment regarding delegation of the duty of good faith (Doc. 33). The Court has reviewed the submissions of the parties and the relevant law. For the reasons set forth below, the Court finds that Defendant's motion will be granted in part and denied in part; Plaintiff's duty-to-defend motion will be granted; and Plaintiff's delegation-of-good-faith motion will be denied as unnecessary.

This case arises out of a dispute over insurance coverage. Plaintiff's decedent ("Plaintiff") purchased a commercial general liability ("CGL") policy from Defendant. Operating under the name of Valle del Sol Construction Company, Plaintiff contracted with a third party ("Garcia") to perform renovations on certain apartments owned by Garcia. A dispute arose over the project, and Garcia ended up filing a lawsuit against Plaintiff. Plaintiff tendered defense of the lawsuit to Defendant, which declined to provide a defense. Subsequently, Plaintiff entered into a settlement with Garcia, and then filed this lawsuit against Defendant. Plaintiff maintains Defendant acted in bad faith by

refusing to provide a defense to the lawsuit.  Plaintiff also claims Defendant violated the New Mexico

Unfair Insurance Practices Act ("UIPA"), NMSA § § 59A-16-20 *et seq.*, and the New Mexico Unfair

Practices Act ("UPA"), NMSA § § 57-12-1 *et seq.*  Defendant has moved for summary judgment on

all claims; Plaintiff has moved for partial summary judgment on the question of whether Defendant

breached its duty to defend; and Plaintiff has moved for partial summary judgment on the question

of what effect, if any, Defendant's consultation with outside coverage counsel should have on this

case.

Summary judgment is appropriate only "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(c).  When applying this standard, a court must "view the evidence and draw

reasonable inferences therefrom in the light most favorable to the nonmoving party."  *Simms v.

Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir.

1999).  A mere scintilla of evidence supporting the nonmoving party's theory does not create a

genuine issue of material fact.  *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1175 (10th Cir.

1999).  Instead, the nonmoving party must present facts such that under the applicable law, a

reasonable jury could find in its favor.  *Id.*  The Court will analyze the various motions for summary

judgment under this standard.

### Duty to Defend

If an insurer was not in possession of extrinsic evidence at the time the insurer decided not

to accept defense of a lawsuit filed against the insured, the question of the insurer's duty to defend

is determined by comparing the allegations of the complaint with the provisions of the insurance

policy.  *G & G Services, Inc. v. Agora Syndicate, Inc.*, 993 P.2d 751, 756 (N.M. App. 1999).  The

factual allegations of the complaint, not the legal theories asserted in the complaint, must be the focus

of the inquiry. *Lopez v. N.M. Pub. Schs. Ins. Auth.*, 870 P.2d 745, 747 (N.M. 1994); 14 *Couch on Insurance 3d*, § 200:20, p. 200-56 (1999) ("It is the factual allegations instead of the legal theories alleged which determine the existence of a duty to defend."). A duty to defend exists if the factual allegations of the complaint tend to show there is an occurrence within the coverage of the policy, for at least some of the allegations in the complaint. *Lopez*, 870 P.2d at 748. The factual allegations in the complaint must be construed in favor of the insured, which means in favor of the duty to defend. *Couch*, § 200:13, pp. 200-39 and 200-40; *Valley Improvement Ass'n, Inc. v. U.S. Fidelity Guar. Corp.*, 129 F.3d 1108, 1116-17 (10th Cir. 1997) (applying New Mexico law). The duty to defend the insured is broader than the duty to indemnify. *Nat'l Union Fire Ins. Co.v. Structural Systems Tech.*, 964 F.2d 759, 761 (8th Cir. 1992). At a minimum, the insurer is required to conduct an investigation into the facts if any factual allegations in the complaint tend to show a possibility of coverage, even if other allegations concern claims that are clearly not covered. *Agora*, 993 P.2d at 759; *Valley Improvement*.

**Whether the Amended Complaint Alleges an Occurrence:**  The first question debated by the parties is whether Garcia's first amended complaint, brought against Plaintiff, alleged an occurrence under the policy, thus triggering a duty to defend. Defendant declined to offer a defense, on the ground that no occurrence was alleged. Defendant pointed out that the legal claims raised in the amended complaint included breach of contract, fraud and misrepresentation, unfair trade practices, and malicious abuse of process. (Exh. F, Def. MSJ) Defendant continues to argue that the first amended complaint does not allege an occurrence under the CGL policy.

Plaintiff responds by pointing to paragraph 11 of the amended complaint, which lists a number of factual assertions concerning Plaintiff's alleged wrongful acts. Subparagraph 11(i) alleges that Plaintiff "failed to take normal and reasonable precautions to protect the premises during the course of the work, and substantially damaged the premises (including existing walls, hardwood floors, and

other parts of the premises) during the course of the work..."  This subparagraph, read broadly,

alleges damage to parts of the premises other than those upon which Plaintiff was performing work.

Defendant's own senior claims examiner, as well as Mr. Davis, the employee who declined to provide

a defense, both agreed that accidental damage to something other than the insured's work or work

product (in other words, damage to portions of the premises that Plaintiff was not working on) is

consequential or resultant damage, and constitutes an occurrence under the policy.  (Exh B, Pltf.

MSJ, Shanks depo. p. 77; Exh. C, Pltf. MSJ, Davis depo. pp. 124-25).  In fact, Mr. Davis specifically

agreed that subparagraph 11(i), if read "in a vacuum," could potentially describe an occurrence under

the CGL policy.  (Exh. C, pp. 124-25)

To counteract these admissions, Defendant argues that one subparagraph in a complaint

cannot give rise to a duty to defend; that the amended complaint must be read as a whole, in light of

the causes of action alleged against Plaintiff; and that subparagraph 11(i) cannot be read in a vacuum

to create a duty to defend.  The Court disagrees.  As noted above, it is the factual allegations of a

complaint that create a duty to defend, not the legal theories or causes of action alleged in the

complaint.  Furthermore, even if only one sentence of the complaint alleges facts that tend to establish

an occurrence, at minimum the insurer must conduct an investigation to determine whether coverage

might in fact exist regarding the claim stated in that one sentence.  *See Agora; Lopez.*  Finally,

Defendant overlooks the principle that the third party's complaint against Plaintiff must be read in

favor of the duty to defend.  The amended complaint alleges damage to parts of Garcia's premises

upon which Plaintiff was not performing work; damages to non-work portions of the premises can

constitute an occurrence under the policy; and Defendant at minimum had a duty to investigate to

determine whether such an occurrence was indeed being alleged.  For these reasons, the Court finds

that the claimed lack of an occurrence should not have been the basis of Defendant's refusal to defend

the underlying lawsuit in this case.[1]

**Whether Exclusions in the CGL Policy Vitiated the Duty to Defend:**  After Plaintiff filed

this lawsuit, during the summary-judgment process, Defendant raised the following argument:  even

if the amended complaint did sufficiently allege an occurrence, several exclusions contained in the

CGL policy exclude coverage over the occurrence.  Plaintiff raises several procedural objections to

this argument, and also addresses the merits of each claimed exclusion.

**Mend-the-Hold Doctrine:**  Plaintiff's first procedural objection is based on a doctrine called

the "mend the hold" doctrine, which has seen increased use in the past twenty years.  The mend-the-

hold principle is most frequently applied in contracts disputes, particularly to cases involving

insurance coverage.  *Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357, 363 (7th Cir. 1990);

Sitkoff, Robert H., *"Mend the Hold" and Erie: Why an Obscure Contracts Doctrine Should Control*

*in Federal Diversity Cases*, 65 U.Chi.L.Rev. 1059 (1998).  It is based on the duty of good faith

inherent in every contract, which is especially strong in insurance cases.  *Id.*  Put simply, the doctrine

says this:  once an insurer has declined to provide coverage on one ground, the insurer will not be

---

[1]The Court notes that Plaintiff has also argued that the amended complaint alleges damages for lost use of the premises, and that such damages are consequential or resultant damages and therefore also constitute an occurrence under the CGL policy.  Due to the resolution of the subparagraph 11(i) issue, the Court need not address this argument at this time.  In addition, the Court notes that the opinions of both Mr. Davis and of Defendant's outside coverage counsel, Mr. Whitham, that no occurrence had been alleged, do not create a factual issue as to whether the complaint sufficiently alleges an occurrence.  Both Mr. Davis and Mr. Whitham applied incorrect analyses.  Mr. Davis focused on the legal theories alleged in the complaint, rather than the factual allegations.  Mr. Whitham, while acknowledging that subparagraph 11(i) "arguably" could allege an occurrence, decided that the subparagraph in reality was a claim of faulty performance of the work, not a claim for consequential damages to property outside the scope of the work.  (Exh. G, Def. MSJ)  Mr. Whitham therefore failed to construe the complaint in the light most favorable to coverage, as he was required to do.  Once it is determined that the factual allegation "arguably" alleges an occurrence, it is the insurer's duty to investigate the matter and provide a defense unless it becomes clear there has been no occurrence.  *See* discussion above.

allowed to raise another ground as a defense to coverage (with exceptions discussed briefly below).

Applied to this case, the doctrine would mean that Defendant, which denied coverage and a defense

on the basis that no occurrence had been alleged in the third-party complaint, cannot now raise a new

argument that coverage was eliminated by certain exclusions contained in the policy.  In other words,

since Defendant never mentioned the applicability of any possible exclusions when it declined to

provide a defense, Defendant may not now rely on any exclusions to justify its failure to defend.

Courts have applied two main forms of the mend-the-hold doctrine:  one which precludes an

insurer from raising a new defense after litigation has already begun, and one which precludes any

new defense even before litigation has started.  *Harbor*, 922 F.2d at 364; Sitkoff, *supra*.  Under the

former, the insurer is free to raise a new defense to coverage until the insured files its lawsuit against

the insurer.  This type of mend-the-hold doctrine has been applied in New Mexico, albeit in an

extremely old case and not in the insurance context.  *See, e.g., Home Savings Bank of Des Moines,*

*Iowa v. Woodruff*, 14 N.M. 502, 509 (1908).  Under the latter form of the doctrine, an insurer is

essentially bound by the reasons it provides in its letter declining a defense or coverage, and may not

raise any new defenses.  Sitkoff, *supra*.

Plaintiff contends Defendant did not point to any exclusions, to explain its refusal to defend

the lawsuit, until after this current litigation began.  Plaintiff therefore argues that the less stringent

post-litigation mend-the-hold doctrine should be applied to preclude Defendant from now relying on

any possible exclusions to vitiate its duty to defend.  Defendant argues it is not so precluded, and

points to a 1968 New Mexico case, *Larson v. Occidental Fire & Cas.Co.*, 446 P.2d 210 (N.M.

1968), *overruled on other grounds*, *Estep v. State Farm Mut. Auto. Ins. Co.*, 703 P.2d 882, 887

(N.M. 1985), in support.  In *Larson*, the New Mexico Supreme Court held that ordinarily, an insurer

who denies liability on a specific ground, and who has knowledge of all pertinent facts, waives all

other possible grounds for liability.  This rule only applies, however, where the insured can show a

detriment or prejudice resulting from the insurer's failure to raise its other grounds for denial of coverage.  446 P.2d at 212.  If *Larson* applies to this case, therefore, the mend-the-hold doctrine would not apply unless Plaintiff could show some type of prejudice resulting from Defendant's failure to mention any exclusions in its denial letters or its answer to Plaintiff's complaint.

The Court does not believe *Larson* is controlling on the mend-the-hold issue presented in this case, for two reasons:  first, *Larson* did not mention that doctrine at all, and cannot be said to have rejected it; second, and more importantly, *Larson* is a coverage-dispute case, while this case is a duty-to-defend case.  That difference is highly significant because an insurer's compliance with its duty to defend is analyzed on the basis of facts known to the insurer at the time it declines to defend, not on the basis of facts the insurer can subsequently discover.  *See, e.g., Nat'l Steel Corp. v. Golden Eagle Ins. Co.*, 121 F.3d 496, 499 (9th Cir. 1997) (duty to defend arises if the facts known to the insurer indicate a potential or possibility for indemnity; insurer has no duty only if, at the time of its decision, it can prove that the claim cannot fall within policy coverage); *Perkins v. Allstate Ins. Co.*, 63 F.Supp.2d 1164, 1174-75 (C.D. Cal. 1999) (relevant inquiry in duty-to-defend case is not facts as they now appear, but facts as they were known to the insurer at the time coverage was sought); *cf. Buzzard v. Farmers Ins. Co., Inc.*, 824 P.2d 1105, 1109 (Okl. 1991) (decisive question in bad-faith case is whether insurer had a good-faith belief, at the time its performance was requested, that it had justifiable reason to withhold payment under the policy).  Similarly, the reasons the insurer gives for refusing to defend a lawsuit, at the time of such refusal, should be the only subject of analysis in deciding whether the insurer acted in good faith toward its insured when it declined to provide a defense.  Otherwise, an insurer could provide any explanation it wanted to deny a defense, even if it did not in good faith believe that reason, and then scramble to try to come up with a different, better justification for its refusal.  *See Harbor Ins.*, 922 F.2d at 363 (a party who "hokes up a phony defense" to performance of its duties, then tries another defense on for size when the first defense

fails, can properly be said to be acting in bad faith).  The Court therefore predicts that New Mexico courts, which have been solicitous of the rights of insureds in many contexts in the last two decades, would not apply *Larson* in the context of a duty-to-defend case such as this.  Instead, the Court predicts the mend-the-hold doctrine would be adopted to prevent an insurer from giving one justification for a refusal to defend at the time such defense is requested, and then later changing the justification if the first reason proves to be unsuccessful.[2]

**Merits of Defendant's Claimed Exclusions:**  Even if Defendant's claimed exclusions are considered, they do not affect the duty to defend in this case.  Defendant maintains several exclusions apply to the allegations in the complaint.  The first exclusion is 2(a), which excludes any damage "expected or intended from the standpoint of the insured."  (Exh. E, Def. MSJ, CGL policy)  This exclusion applies to intentional acts or to damage the insured expected or intended to cause.  Read in the light most favorable to coverage, however, the complaint alleges that Plaintiff negligently caused damage to the premises.  This exclusion therefore does not eliminate the duty to defend.

Defendant also claims exclusions 2(j)(5) and 2(j)(6) apply to the allegations of the complaint.  Both of these exclusions preclude coverage for property damage to "[t]hat particular part" of property on which the insured has performed work.  These exclusions are intended to deny coverage for faulty workmanship claims.  Franco, Robert J., *Insurance Coverage for Faulty Workmanship Claims Under Commercial General Liability Policies*, 30 Tort & Ins. L.J. 785, 795-98 (1995).  This is why the exclusions both refer to "that particular part" of property on which work is being performed.  Damage to other parts of the premises, however, upon which no work was being performed, is not subject to these exclusions.  *See id.; see also Canal Indem. Co. v. Blackshear*

---

[2]The Court notes Plaintiff's argument that even under *Larson*, Plaintiff would prevail because the expense of filing this lawsuit, to try to disprove Defendant's claim that no duty to defend existed, is sufficient reliance on Defendant's prior statements as to its grounds for refusing to defend.  The Court need not address that argument, given its decision concerning the mend-the-hold doctrine.

*Farmers Tobacco Warehouse*, 490 S.E.2d 129 (Ga. App. 1997) (similar exclusion precluded coverage for cost of repairing portion of roof worked on by subcontractor, but did not exclude coverage for damage caused to rest of roof or to tobacco contained in warehouse). In other words, under these exclusions an insured is not covered for the costs of repairing or replacing work the insured has performed badly; but if during the performance of that work, or afterward, the insured causes damage to parts of the premises other than the work itself, the exclusions do not apply. Put simply, these exclusions have no effect on claims for resultant or consequential damages, where such damages have been alleged.

Defendant also argues that, under the "products-completed operations hazard" provision of the CGL policy, combined with exclusion 2(j)(6), the policy provides no coverage for any property damages at all, if the project has been abandoned. Defendant points out that the complaint in several places alleges that Plaintiff abandoned the work. According to Defendant, if a project has been abandoned, no coverage is available for damage of any kind, whether those damages are to the work that was performed prior to the abandonment or to other parts of the premises that were never worked on. The Court disagrees with this construction of the policy, for several reasons. First, as pointed out above, exclusion 2(j)(6) has no impact on claims for damage to parts of the property upon which no work was performed. Furthermore, this exclusion explicitly does not apply to any property damage included in the "products-completed operations hazard" provision of the policy. (Exh. E, Def. MSJ) Exclusion 2(j)(6), therefore, is irrelevant to claims such as the consequential-damages claims alleged in subparagraph 11(i), whether or not the project was abandoned. As to the "products-completed operations hazard" provision, it is not an exclusion at all; it is simply a definition that does not exclude coverage and does not provide coverage. Instead, the definition must be applied where the provision is mentioned in other parts of the policy. The only provisions in the policy that mention "products-completed operations hazard" are exclusions 2(j)(6) and 2(l). The

former has been discussed above.  The latter excludes  property damage to the insured's work, if that

damage is included in the "products-completed operations hazard."  It does not, however, exclude

damage to portions of the premises that were not worked on, such as the damages alleged in

subparagraph 11(i).  Although analysis of the exclusion provisions of the CGL is complicated, due

to the unnecessarily obscure manner in which they are written, the result of this analysis is simple:

both exclusions 2(j)(6) and 2(l) preclude coverage for damage caused by faulty workmanship, and

both limit their exclusions to the portion of the property upon which the insured was working.  Due

to the operation of the "products-completed operations hazard," exclusion 2(j)(6) applies to work

that has not yet been completed or abandoned, while exclusion 2(l) applies to work that has been

completed or abandoned.  *See* Franco, *supra*, pp. 796-97, 799-800 (discussing these two exclusions).[3]

Unless there is another exclusion applying to consequential or resultant damages, however, which is

not the case here, the policy provides coverage for such damages.[4]

---

[3]The Court also disagrees with Defendant's apparent interpretation of the "products-completed operations hazard" provision.  The definition applies to all property damage arising out of an insured's work, except work that has "not yet been completed or abandoned."  The plain meaning of this definition is that if property damage arises out of an insured's work, the damage is included in the definition unless the work has not yet been completed or has not yet been abandoned. In other words, if the work has been completed or has been abandoned, property damage arising out of that work is included in the definition.  Defendant, however, appears to read this provision to apply only if the work has not yet been completed, or has not been abandoned.  Defendant thus ignores the "yet" for purposes of the abandonment part of the sentence.  The Court does not agree with this reading.  The important consideration for purposes of the definition is whether the insured has relinquished control of the premises, by completion of the project or by abandonment; the provision is not intended to be an exclusion of all damages if the insured abandons a project.  *See, e.g., State Auto Property and Cas. Ins. Co. v. Midwest Computers & More,* 147 F.Supp.2d 1113, 1117 (W.D. Okla. 2001) (completed-operations hazard applies if defendant had completed *or* abandoned its work when the property damage occurred); *Laidlaw Envt'l Svs., Inc. v. Aetna Cas. & Surety Co. of Illinois*, 524 SE.2d 847, 850 (S.C. App. 1999) (completed-operations coverage applies when an insured abandons work on a project, thus effectively "completing" its work on that project).

[4]In reading the case law concerning the "products-completed operations hazard," it must be kept in mind that there is case law addressing exclusions of this hazard, and case law addressing policies that provide coverage for the hazard.  Given the confusing nature of the standard CGL

Based on the foregoing, the Court finds the amended complaint adequately alleged an occurrence, so as to at minimum trigger a duty on Defendant's part to investigate further. Also, the Court finds no exclusion in the policy applied to vitiate the duty to investigate and/or defend.

**Unfair Insurance Practices Act, Bad Faith, and Breach of Contract Claims**

Defendant requested summary judgment on all these claims, arguing in essence that there was no duty to defend and its actions were therefore reasonable and in good faith. As discussed above, there was at minimum a duty to investigate further in this case before refusing to defend the lawsuit. Defendant made its decision to decline coverage or a defense quickly, after reviewing only the amended complaint that had been filed. Despite acknowledging that a portion of that amended complaint might state a covered claim, Defendant did not investigate further. Also, although Defendant relied on the advice of outside counsel to "confirm" its denial of a defense, as discussed below that advice was not obtained until after the underlying lawsuit had already been settled. This evidence is sufficient to raise an issue of fact as to whether Defendant conducted a reasonable investigation under the circumstances, acted in good faith, and breached its contract with Plaintiff. *See, e.g., Agora, supra*, 993 P.2d at 760 (insurer's failure to reasonably investigate claim could support UIPA claim, as well as breach-of-contract claim). Summary judgment will therefore be denied on all these claims.

**Unfair Practices Act Claim**

Plaintiff maintains Defendant violated the UPA by failing to deliver the quality or quantity of goods and services contracted for. Defendant responds by pointing out that it is not sufficient to simply show a breach of the contract; Plaintiff must also present evidence of a false statement or

---

policy, it is easy to confuse the issue. What must be kept in mind is that, as discussed above, the definition of the hazard, standing alone, does not exclude or provide coverage. Instead, it is necessary to review the coverage or exclusion portions of the particular policy to determine whether the hazard is intended to be excluded or covered.

misrepresentation by Defendant, made during the purchase of the insurance policy in question in this case.  The Court agrees with Defendant.  It is not sufficient for a plaintiff to show a subsequent breach of a contractual duty, in order to state a claim under the UPA.  Instead, the plaintiff must present evidence of a knowing misrepresentation by the defendant, made during the course of the negotiation or purchase of goods or services. *See Stevenson v. Louis Dreyfus Corp.*, 811 P.2d 1308, 1311-12 (N.M. 1991).  Plaintiff has presented no evidence of such statements by any agent or representative of Defendant.  Therefore, summary judgment will be granted on this claim.

### Motion Concerning Delegation of Duty, Reliance on Outside Counsel

Plaintiff requests partial summary judgment holding two things:  (1) Defendant cannot delegate its duty of good faith; and (2) Defendant cannot raise "reliance on counsel" as an affirmative defense.  In response, Defendant acknowledges that its duty of good faith is not delegable; this portion of the motion, therefore, is denied as unnecessary.  Defendant also argues that, while reliance on counsel's advice is not a complete affirmative defense, it is a factor that may be considered by the jury in assessing Defendant's good faith or lack thereof.[5]

Plaintiff, in reply, does not contend that evidence concerning reliance on the advice of counsel is irrelevant to a bad-faith claim.  Plaintiff simply reiterates that such reliance should not be considered a total defense to that claim.  It does not appear, therefore, that there is a dispute between the parties that needs resolution.  To the extent such a dispute may remain, the Court finds that evidence that an insurer obtained advice from outside counsel, or any counsel, may be relevant to a bad-faith claim based on a failure to defend.[6] *See, e.g., O'Neill v. Gallant Ins. Co.*, 769 N.E.2d 100, 107 (Ill. App.

---

[5]Defendant does use some unfortunate language in its brief, to the effect that reliance on counsel is a proper "defense" to a claim of bad faith.  The case citations in Defendant's brief, however, indicate that Defendant is not in reality arguing that obtaining advice from counsel is a complete defense to a bad-faith claim, but is simply evidence that is relevant to such a claim.

[6]At this point it is not clear how relevant the evidence will be in this case, since Defendant did not obtain its advice from outside counsel until February, 2003. (Exh. G, Def. MSJ)  This was after

2002) (advice of defense counsel is a factor to be considered); *Barnes v. Oklahoma Farm Bureau Mut. Ins. Co.*, 11 P.3d 162, 174 (Okla. 2001) (reliance on advice of counsel can be a defense to bad-faith suit, but it is but one factor to be considered); *Szumigala v. Nationwide Mut. Ins. Co.*, 853 F.2d 274, 282 (5th Cir. 1988) (same).

**Conclusion**

Based on the foregoing, Defendant's motion for summary judgment will be granted in part and denied in part.  Plaintiff's motion for partial summary judgment concerning the duty to defend will be granted, and Plaintiff's motion for summary judgment concerning delegability of the duty of good faith, as well as reliance on counsel as an affirmative defense, will be denied.

**ORDER**

A Memorandum Opinion having been entered this date, it is hereby ORDERED that Defendant's motion for summary judgment (Doc.27) be, and hereby is, GRANTED in part and DENIED in part; Plaintiff's motion for partial summary judgment regarding the duty to defend (Doc. 31) be, and hereby is, GRANTED; and Plaintiff's motion for partial summary judgment regarding delegation of the duty of good faith (Doc. 33) be, and hereby is, DENIED.

Dated this 24th day of May, 2004.

BRUCE D. BLACK
United States District Judge

---

Defendant had already refused to defend the lawsuit, and after Defendant was notified the lawsuit was scheduled for mediation and possible settlement.  (Exh. F, Def. MSJ; Exh. S, Pltf. Resp. to Def. MSJ)

**ATTORNEYS**:

**For Plaintiff**:
Mark C. Dow

**For Defendant**:
Terry R. Guebert
RaMona G. Bootes